UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ELOY NICOLÁS ZÚÑIGA CUIDAD,

    *Petitioner*,

v.

AIDA STEFFANI LEZAMA REYES,

    *Respondent*.

Case No. 1:23-cv-926 (MSN/LRV)

### MEMORANDUM OPINION & ORDER

This matter comes before the Court on Petitioner's Motion for a Temporary Restraining Order (Dkt. No. 2) ("TRO Motion"). Because it appears just and proper to do so, the Court will grant that motion.

**I.   BACKGROUND**

In July 2012, minor L.V.Z.R. was born to Petitioner Eloy Nicolás Zúñiga Cuidad and Respondent Aida Steffani Lezama Reyes. Dkt. No. 1 ¶ 12.  ("Pet."). This case concerns that 10-year-old child.

L.V.Z.R. and both of her parents are Peruvian citizens and have resided in Lima from her birth until Respondent left Peru and brought L.V.Z.R. to the United States in September 2022. *Id.* ¶ 16. Leading up to that time, Respondent requested Petitioner's permission to travel to Mexico with the child for a multiweek vacation in September 2022. *Id.* ¶ 26. Petitioner approved. *Id.* ¶ 28.

One day into that vacation, Petitioner received confirmation that Respondent and the child had safely arrived in Mexico. *Id.* ¶ 27. However, according to Petitioner, that was the last time

1

that he heard from either the child or her mother until more than two weeks later. *Id.* ¶¶ 31–33. At that time, Respondent informed Petitioner that she had brought L.V.Z.R. to the United States and that neither of them would be returning to Peru. *Id.* ¶ 33.

In November 2022, Petitioner completed an application to have L.V.Z.R. returned to Peru under the Hague Convention and ICARA. *Id.* ¶ 51 (citing 1980 Convention on the Civil Aspects of International Child Abduction ("Hague Convention"); the International Child Abduction Remedies Act ("ICARA")). Petitioner has also retained pro bono counsel who filed a Verified Petition, initiating the instant matter. *See* Dkt. No. 1. Currently pending before the Court is Petitioner's TRO Motion, in which he requests the Court to (among other things) enjoin Respondent from removing L.V.Z.R. from the Commonwealth of Virginia. *See* Dkt. No. 2.

## II.  DISCUSSION

A TRO is a drastic remedy intended to preserve the status quo until the Court can hold a hearing on a motion for a preliminary injunction. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999) (noting that a TRO "preserve[s] the status quo only until a preliminary injunction hearing can be held"). "The standard for granting either a TRO or a preliminary injunction is the same." *Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006). Thus, to obtain a TRO, a party must show (1) a likelihood of success on the merits of its claims; (2) a likelihood of irreparable harm in the absence of the requested relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### A.  LIKELIHOOD OF SUCCESS ON THE MERITS

The party seeking a preliminary injunction must make a "clear showing" that it is likely to succeed at trial on the merits. *The Real Truth About Obama, Inc. v. Fed. Elec. Comm'n*, 575

F.3d 342, 351 (4th Cir. 2009). To have L.V.Z.R. returned to Peru, Petitioner would have to show that: (1) the child was removed from a country in which she was a habitual resident just before the removal; (2) the removal or retention breached established custody rights as defined by that country; and (3) these custodial rights were exercised or would have been so exercised but for the removal. *See* Hague Convention, art. 3.

After a review of the record, the Court finds that Petitioner has clearly demonstrated that he is likely to succeed on the merits. *First*—because it was the only place she had lived from her birth up to her removal and retention in the United States—L.V.Z.R.'s country of habitual residence is Peru. Pet. ¶ 16; *see also Monasky v. Taglieri*, 140 S. Ct. 719, 723 (2020) (noting that "locating a child's home is a fact-driven inquiry"). *Second*, under Peruvian law, Petitioner has *ne exeat* rights which entitled him to prohibit Respondent from bringing L.V.Z.R. to the United States. Pet. ¶ 32; *see also Abbott v. Abbott*, 560 U.S. 1, 21–22 (2010) (holding that *ne exeat* rights are "rights of custody" under the Hague Convention). And *third*, Petitioner was exercising his custodial rights and would have continued to do so but for Respondent's actions. Pet. ¶ 21; *see also Bader v. Kramer*, 484 F.3d 666, 671 (4th Cir. 2007) (noting that courts should "liberally find 'exercise' [of custodial rights] whenever a parent with *de jure* custody rights keeps, or seeks to keep, any sort of regular contact with his or her child").

### B. IRREPARABLE HARM

The Court finds that allowing Respondent to flee with L.V.Z.R. would irreparably harm Petitioner. The Hague Convention is intended "to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition." *See* 22 U.S.C. § 9004(a). The Verified Petition alleges that, despite Petitioner's continuous attempts to exercise his custodial rights, Respondent has already wrongfully retained L.V.Z.R. in

the United States for close to a year. Pet ¶ 53. This raises concerns that, absent a court order forbidding it, Respondent could move L.V.Z.R. away from this jurisdiction, further concealing their whereabouts. Such action would frustrate the goals of the Hague Convention and thwart this Court's ability to resolve the Verified Petition before it. *See Alcala v. Hernandez*, No. 4:14-cv-4176, 2014 WL 5506739, at *6 (D.S.C. Oct. 30, 2014) ("The court observes that allowing the father to flee with the [c]hildren is contrary to the very purpose of the Hague Convention and ICARA, and would result in irreparable harm."). For that reason, the Court finds that Petitioner would face irreparable harm if his request was to be denied. *See Velasquez v. Velasquez*, No. 1:14-cv-1688, 2014 WL 7272934, at *5 (E.D. Va. Dec. 15, 2014) (finding a risk of irreparable harm when a mother transported a child to the United Staes without approval from the father).

### C. BALANCE OF EQUITIES

The equities tip in Petitioner's favor. Notably, Petitioner is not seeking a permanent custody order from this Court. And for good reason: "[T]he return remedy does not alter the pre-existing allocation of custody rights between parents; the Convention generally leaves ultimate custodial decisions to the courts of the country of habitual residence." *Alcala v. Hernandez*, 826 F.3d 161, 169 (4th Cir. 2016). Both the instant motion and the underlying petition seek only the ability to determine custody in Peru. For that reason, Respondent does not stand to lose any parental rights, and thus the issuance of the sought-after injunction places no burden on her. *See Abbott*, 560 U.S. at 20 ("Ordering a return remedy does not alter the existing allocation of custody rights but does allow the courts of the home country to decide what is in the child's best interests. It is the Convention's premise that courts in contracting states will make this determination in a responsible manner.").

### D. PUBLIC INTEREST

The public interests also favor protecting Petitioner's parental rights. *Salguero v. Argueta*, No. 5:17-cv-125, 2017 WL 1067758, at *2 (E.D.N.C. Mar. 21, 2017) ("A TRO serves the public interest. Since international abduction and wrongful retention of a child is harmful to his or her wellbeing, a TRO in this case will serve the public interest by protecting the child's well-being." (cleaned up)).

### E. BOND

Finally, under Rule 65(c), the Court would normally require a bond when granting a temporary restraining order. Fed. R. Civ. P. 65(c). However, the Court may choose not to impose such a requirement. *Hoechst*, 174 F.3d at 421 n.3. And—considering the remoteness of any risk of harm to Respondent (as well as Petitioner's financial circumstances)—the Court will exercise its discretion to waive the bond obligation in this case.

\*   \*   \*

## III. CONCLUSION

For the reasons set forth above, it is hereby

**ORDERED** that Petitioner's Motion for a Temporary Restraining Order (Dkt. No. 2) is **GRANTED**; it is further

**ORDERED** that Respondent Aida Steffani Lezama Reyes is **ENJOINED** from removing L.V.Z.R. from Virginia during the pendency of this litigation; it is further

**ORDERED** that the parties appear before the Court at **10 a.m. on Friday, August 4, 2023**, for a preliminary injunction hearing to determine whether this Temporary Restraining Order will be converted to a preliminary injunction under Federal Rule of Civil Procedure 65; it is further

**ORDERED** that Respondent relinquish L.V.Z.R.'s travel documents, including any Peruvian passports and any American Visas, to the United States Marshal upon service of process (or as soon as practicable thereafter if those documents are secured in a different location); it is further

**ORDERED** that, by **Wednesday, August 2, 2023**, Respondent shall **SHOW CAUSE** (in writing) as to why she should not be prohibited from removing L.V.Z.R. from Virginia during the pendency of this litigation; and it is further

**ORDERED** that The United States Marshal shall serve Respondent Aida Steffani Lezama Reyes with process by personally delivering a copy of the Summons, Verified Petition, and this Order to her home at 10513 Lariat Lane, Apartment #2, Manassas, Virginia 20109.

**SO ORDERED.**

/s/
Hon. Michael S. Nachmanoff
United States District Judge

Alexandria, Virginia
July 24, 2023